OPINION OF THE COURT
Herbert I. Altman, J.
Defendant moves for inspection of the Grand Jury minutes and for dismissal of the indictment pursuant to CPL 210.20.
The Grand Jury heard testimony that, following the ostensibly fortuitous discovery of more than 800 counterfeit handbags in a van in lower Manhattan, the police obtained and executed search warrants for storage facilities located at 520 West 17th Street and 161 Varick Street. A total of over 8,000 additional counterfeit handbags were recovered at those locations. The bags bore the spurious trademarks of Fendi, Chanel, Louis Vuitton and Dooney & Bourke.
The People adduced no evidence as to the monetary value of the bags recovered. Instead, representatives from each of the four corporations whose goods had been counterfeited testified that the value of the trademark of the company was in excess of $100,000. For example, a representative of Chanel Inc. stated that domestic sales of Chanel products alone greatly exceeded $100,000,000 so that the value of the Chanel trademark was necessarily in excess of $100,000.
At the close of the presentation the Grand Jury voted an eight-count indictment charging the defendant with four counts of trademark counterfeiting in the first degree (corresponding to each of the four trademarks) and four counts of trademark counterfeiting in the second degree.
The Legislature added the crimes of trademark counterfeiting in the first, second and third degrees in 1992 (L 1992, ch 490). Trademark counterfeiting in the third degree (Penal Law § 165.71) is classified as a class A misdemeanor and provides as follows: "A person is guilty of trademark counterfeiting in the third degree when, with the intent to deceive or defraud some other person or with the intent to evade a lawful restriction on the sale, resale, offering for sale, or distribution of goods, he or she manufactures, distributes, sells, or offers *453 for sale goods which bear a counterfeit trademark, or possesses a trademark knowing it to be counterfeit for the purpose of affixing it to any goods.”
Trademark counterfeiting in the second degree (Penal Law § 165.72), a class E felony, contains all of the provisions of the misdemeanor as well as the added requirement that "the value of such goods, or trademark” exceed $1,000. In the case of trademark counterfeiting in the first degree (Penal Law § 165.73), a class C felony, such value must exceed $100,000.
The People informed the grand jurors prior to their vote that in considering the first four (first degree) counts they were to weigh the testimony pertaining to the values of the respective trademarks, while the last four (second degree) counts related to the value of the handbags seized. These last four counts present the easier case for analysis, as no evidence whatsoever was presented to the Grand Jury pertaining to the value of handbags in question. Grand jurors are not permitted to speculate as to the likely value of the counterfeit goods (cf, People v Lopez, 79 NY2d 402). The defendant in Lopez was charged with violation of section 165.45 of the Penal Law (possession of a stolen motor vehicle having a value exceeding $100). In their presentation to the Grand Jury the People introduced an affidavit from the owner of the automobile which stated that the value of the vehicle was over $2,500. The affidavit did not provide the basis of the valuation. The Court affirmed the reduction of the charge to section 165.40 of the Penal Law, which does not require proof of value, stating that an owner’s affidavit must contain a basis of valuation so that the Grand Jury "can reasonably infer, rather than merely speculate, that the property * * * has the requisite value to satisfy the statutory threshold” (79 NY2d, at 405).
In the case before me the People’s presentation did not contain any assessment of the value of the handbags, let alone a basis upon which to evaluate them. In the absence of such proof the People failed to establish the necessary element of the offense, that "the value of such goods” exceed $1,000. These counts are, accordingly, reduced to trademark counterfeiting in the third degree (Penal Law § 165.71), which does not require proof of value.
The People asked the Grand Jury to charge defendant with the first degree counts upon the premise that the value of each of the four trademarks exceeded $100,000. It is not completely clear upon what basis the witnesses made their *454 evaluations, but it appears from the questions asked by the People as well as the answers given, that the People suppose that the valuation is calculated in gross, or on the basis of world-wide sales, without respect to the specific goods counterfeited. Under this theory, if an individual sold but one counterfeit Chanel key case, he would still be committing the crime of trademark counterfeiting in the first degree, because the Chanel trademark, which is put on goods as diverse as perfume, cosmetics and luggage yields over $100,000,000 in sales. If the statute were to be interpreted in that manner, anyone who appropriated a logo or trademark of a national or multinational corporation, those most likely to be counterfeited, would always be guilty of the first degree offense, and in these cases it would never be necessary to resort to prosecutions for the lower degree crimes. Moreover, an individual who counterfeited the same type of item, but one which was made by a smaller entity would be punished less severely because the trademark would not be valued in excess of $100,000.
Is it possible that the statute is to be interpreted in this manner? The legislative memoranda by the statute’s sponsors give no clue, nor can I find any guidance in analogous statutes from other jurisdictions. Many sister jurisdictions punish trademark counterfeiting, but none has adopted a statutory scheme remotely comparable to ours (see, e.g., Cal Penal Code § 350; Ore Rev Stat § 647.991; Wis Stat § 132.20).
If the statute were to be interpreted in the manner advanced by the People, the statutory scheme would be unique in this jurisdiction, as there is no law or series of laws in our Penal Law which punishes an act more severely if it is committed against the wealthy than if against the poor, regardless of the harm caused. I doubt that there exists a rational basis for correlating criminal liability with the balance sheet or income statement of the victim, but if one can be found, it is surely odious and in conflict with the best principles of our form of government.
I need not resort to constitutional or public policy arguments, however, to find that these statutes are not to be interpreted as providing greater protection to the trademarks of entities which enjoy greater annual sales. Trademark counterfeiting in the first and second degrees both require, inter alla, that the individual with the requisite scienter manufacture, sell or distribute "goods which bear a counterfeit trademark” and that "the value of such goods or trademark” *455 (emphasis added) exceed specific amounts. The logical reading of these phrases is that "the value of such goods or trademark”, relates back to the "goods which bear a counterfeit trademark.” (Penal Law §§ 165.72, 165.73.) In other words, liability is to be imposed on the basis of the value of the trademark to the goods wrongly passed off as genuine. In practical terms this would most likely be calculated as the incremental value given to the goods by the affixing of the appropriated trademark. The effect of this interpretation would be to grade these crimes on the basis of the value appropriated by the counterfeiter and conform these statutes to the analogous larceny statutes (Penal Law art 155) which are largely graded in degree depending upon the value of the property stolen.
As there was no testimony before the Grand Jury relating the value of the trademarks in question to the goods seized, counts one through four are reduced to trademark counterfeiting in the third degree (Penal Law § 165.71).